Mr. Brown, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors. I've reserved two minutes for rebuttal. Two minutes for rebuttal. Thank you, Your Honor. Henry Dewberry was drafted into the Army in 1966. He complained while he was still in the Army that he had been identified with a condition of an enlarged heart, and it's noted in official Army records that the doctors identified his complaint as possible or suggestive of cardiomegaly. Mr. Brown, I think the major issue, as it appears to me, in your appeal here is whether we have jurisdiction, whether you're talking about application of law to fact, law being the facts. So why do we have jurisdiction? Your Honor, in my research, I cited the cases of Wilson v. Principi and Morgan v. Principi, in which this case or this court identified that the Veterans Benefits Act of 2002 enlarged Section 7292 to give this court a kind of case jurisdiction in cases such as this. Let's see here. Basically, in the cases, the court said, if a governing rule of law would have been altered by adopting the position being urged, then this court has jurisdiction to take the case and decide the case. I believe your position was that the board, back in the late 60s, failed to apply the presumption of soundness, right? Yes, sir. And then in this appeal, in this proceeding, both the board and the Court of Appeals for Veterans Claims agreed with you, or for purposes of deciding the case, agreed with you that the board, back in the late 60s, did not apply the presumption of soundness, right? Yes, Your Honor. And then both the board and the Veterans Court nevertheless concluded that your cue claim should be denied, because when they reviewed the evidence in the record at the time, in the late 60s, they both agreed with each other that, as far as they could tell from the record, your client did not suffer from heart disease when he separated from the military in 1968. Isn't that what the board and the court said, below? The board and the court said, Your Honor, that it doesn't matter if they made the mistake under the presumption of soundness, because Mr. Dewberry failed to meet or undebatably establish the fact that he has cardiomegaly, or an enlarged heart, at the time of his discharge. That's the exact quote, Your Honor. And, first of all, I don't believe that undebatably established is a veteran's burden at any time. I think the veteran's burden isn't as likely as not burden, which allows... Well, we're talking about the cue claim here, which is what makes all the difference, right? I mean, this is not a regular case. So just back to Judge Chen's question. If there was, the veteran's claims both sort of said, even assuming that there was error in terms of the application of presumption of soundness, in other words, accepting your position, your legal position, they still said that it's not absolutely clear that a different result would have ensued. And that's the standard for clear and unmistakable error, is it not? Yes, Your Honor. And is it that not, going back to Judge Lurie's question, a factual matter that we don't have... Why would we have jurisdiction to second-guess the board or the CAVC with respect to whether or not a different result would have ensued? I go back to Wilson v. Principi, Your Honor, and the fact that, in this case, the governing law, being the presumption of soundness, shifts the burden of proof. And burden of proof is a fundamental element of any decision-making court or administrative judicial process. In this case, the burden of proof is shifted. In this case, this court in Wagner has specifically held... Well, I think we would agree with you that the burden, if the government was trying to prove that Mr. Dewberry suffered from some kind of heart disease before 1966, then yes, that would be the government's burden to prove that and then overcome the presumption of soundness that when he entered the military in 1966, in fact, his heart was fine. The problem for you, I think, is that the focus of the board and the Veterans Court's decisions was, what was Mr. Dewberry's condition when he was discharged in 1968? And the presumption of soundness does not apply to discharge in 1968. Presumption of soundness only applies to what was his condition when he entered service in 1966. Do you follow the point I'm trying to make? Your Honor, I believe that Mr. Dewberry's condition at the time he was discharged is important, but I also believe it was also important at the time that the Department of Veterans Affairs made its first rating decision. And when it made its first rating decision, there was a military record that was suggestive of cardiomegaly and there was also a VA examination report suggestive of cardiomegaly. Actually, they used the term LVH, which is also a condition that shows an enlarged heart muscle. And, in fact, the Department of Veterans Affairs ordered additional testing and instead of additional testing, all that was done was a doctor put a stethoscope on the man's chest and listened and said, I don't hear anything. So, I think to use a sports metaphor, at that time the VA punted and said, if there is anything here, it pre-existed military service and wasn't aggravated. But there was no clear and unmistakable evidence on the government side to show that that happened. And they don't quote a clear and unmistakable evidence burden. They just say, like I said in my metaphor, they punted and said, if there's something here, it pre-existed service, so we're going to deny the claim. And our argument is that at that time when the government invoked the presumption of soundness, the burden shifted and the burden was no longer on the veteran, it was on the government. And the government didn't meet its burden and for the sake of this argument, the government has virtually admitted that it has not met that burden, that higher burden, but it said it doesn't matter because he didn't meet any burden. But the government investigated the case. The government didn't deny the case flatly on its merits at first. The government sent the man for two examinations and one examination was suggestive of the condition and one was cursory at best, and I'm paraphrasing basically what was said, was the second doctor said, I didn't hear anything and moved on to the next issue. So there was no real further testing to do that, but the government took that on and the government did that and then the government said, if it's there, pre-exist service. And that invokes the burden of proof shifting under the presumption of soundness and the How do you understand how the presumption of soundness works? How did the presumption of soundness, why does it matter with respect to trying to assess whether he had a service-connected disease at the time he was discharged in 1968? My understanding of the presumption of soundness comes from my reading of Wagner and its progeny. But don't go to those cases, just tell me how it operates here on the facts of this case. In this case, the presumption of soundness applied when the government says it pre-existed service. Right, and now the government walked away from that in this proceeding. They said, we agree. We assume for purposes of this case, Mr. Dewberry was healthy when he entered service in 1966. So what left is there to consider with regard to the presumption of soundness in terms of resolving this case? But Your Honor, at that time, the presumption of soundness also invoked a duty on the government to prove by clear and unmistakable evidence that his condition did not pre-exist and was not aggravated. And the government never met that burden. And if the government has the burden of proof, and it doesn't meet its burden, it shouldn't be permitted to prevail. Just like if we were in a criminal case, if the government has a person under arrest, it has a burden of proof before it can imprison that person. Well, the difficulty here is, and maybe I'm just misunderstanding it, and you or the government can tell me why I'm wrong, but we're dealing with a CU claim. We're dealing with a case that was over and done with, and so we have very limited criteria under which your client or any plaintiff can come in and then seek to revisit all of that. And so I think what we're talking about, or at least I've been talking about, is how you've met a standard under the CU claim that the result would have somehow been different. And it's clear to me that the burden is on you to establish that. Is it not? And bottom line is, I don't understand why that's a factual, not a factual matter of which we have jurisdiction. Your Honor, once again, I quote the Larson case from this court. And to invoke what a CU claim contains, and a CU claim contains a mistake in the law or an application of the facts. And in this case, we have a mistake in the law because the burden of proof was on the government and the government never met its burden of proof. And this gives us a material... Well, is it not correct that our cases, including some recent ones, I mean, establish that for CU claim purposes, you have to establish that the error was undebatable and would have manifestly changed the outcome? Is that not the standard you understand to apply? Exactly, Your Honor. Exactly. So if the government's conceded, as Judge Chen pointed out, this whole presumption of solemnness, and says, you're right about that, you prevail on that, you're left with establishing that the error was undebatable and would have manifestly changed the outcome. And the CAVC and the board reached that question and said, no. And is that not a factual question? I think it's... What we're dealing with is a principle, Your Honor. The principle that is associated with the shifting burden of proof as it attaches to the facts of the case. The burden of proof was on the government. The government didn't meet its burden of proof. Not on the CU claim portion of it, right? You're taking us back, as you have, to the presumption of solemnness principle. Yes, Your Honor. Exactly. What we have here is an issue of the law that wasn't followed and there is no... Well, let's say you prevail on that. Let's say, okay, you're right about that. Given that this is a CU claim, do you disagree that you have to go beyond that in order to establish, to prevail in this circumstance? Your Honor, the elements that you just laid out for us, the undebatability, this is undebatable. The facts, both sides of the case are working with the same set of facts. The facts are that the burden of proof was never met by the government under the presumption of solemnness. And that's exactly my point, Your Honor. But you just keep mentioning the word facts. And as Chief Justice mentioned, application of the law to facts is not within our jurisdiction. Yes, Your Honor. But this is about the burden of proof. And the burden of proof is a rule of law. And if you apply the burden of proof to the wrong party, you can't get a correct result. And that's the clear and unmistakable error. That's exactly it, in a nutshell. That's the exact point I'm making. The point I'm making is there is no debate about the facts, and the burden of proof is applied to the wrong party. And that's why we've consistently lost this case rather than won this case, is because a burden of proof is being applied to us, when the burden of proof had shifted and the government didn't meet its burden of proof. So who has the burden of proof, or do they have some burden to prove that it's clearly and unmistakably obvious from the record that Mr. Dewberry was healthy at the time he was discharged in 1968? Is that your position? Yes, Your Honor. The burden had shifted to them. So it shifted all the way. It shifted not only on presuming that he was healthy, but it was also there's some strong presumption that he was unhealthy when he was discharged in 1968. That's your position in terms of the presumption. The presumption shifted the burden of proof to them and hadn't come back to us. On the burden of proof on what? That he was healthy when he entered service in 1966, right? Yes, Your Honor. But it has nothing, the presumption of soundness has nothing to do with what was the status of his health when he was discharged in 1968. Do you agree with that? That's a difficult question to answer, Your Honor. I think that once the burden of proof shifted to him, shifted to the government, it was off of his shoulders until they met their burden. And what was their burden? That's what we're trying to ascertain. What in your view was their burden? It was a clear and unmistakable evidence burden, Your Honor, to prove two things. That the condition did pre-exist military service and that there was no aggravation of the condition during military service. Okay, why don't we hear from the government here in a minute for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honor. May it please the Court. Mr. Duvery's appeal should be dismissed for lack of jurisdiction because it presents an issue of fact, Your Honor. But can you speak to what your friend on the other side was talking about all this time and try to clarify for us what the government's view is, is how the presumption of soundness factor played into all of this. Yes, Your Honor. The presumption of soundness here was assumed that it wasn't applied. An error was assumed, not necessarily admitted, but assumed for the purposes of clarifying any confusion. So where did that get you? So we're assuming he's right on that. So what does that mean? So this is where the question of fact comes in. And the Board and then the Veterans Court, affirming the Board, looked at the facts that existed at the time in 1968, because this is a Q claim, as Your Honor, so the facts at that time are the facts that we look at. Okay, but before we get to the Q claim part of it, what's going on with respect to the presumption of soundness? Where does the case stand if the government is actually generally accepting or conceding that he's right on that? The decision on the presumption of soundness was that if the condition of cardiomegaly existed at the time, which the evidence isn't at all clear that it did, but if it did, then it would have preexisted service. That's the statement that was made by the Board. But there is no finding that it did exist at the time. Indeed, in the Board decision and the Veterans Court affirmation, it was reiterated that the evidence didn't establish that cardiomegaly existed at the time. And if you look at the evidence in the timeframe that's important, there's no finding of cardiomegaly in the evidence at the time. What timeframe are we looking at now? Are we looking at after service, during and after service, or pre-service? We're looking at his induction into service in 1966, and there was no cardiomegaly noted then. And then if we look at also when he was released from service in 1968, there's some notes that state that the Veteran stated upon his release that he had cardiomegaly, but it wasn't a finding. It was a note from his statement, and there's a few other pieces of evidence. There's a dental record from 1966 as well that has hard murmur with a question mark next to it. It's in our brief that in 1994, Mr. Dewberry moved to reopen his claim and presented new and material evidence at that time. That new and material evidence wasn't in the record in 1966 or 68. That new and material evidence led to, and this is explained in our brief, led to ultimately a rating. And basically this case is about moving the effective date of the benefits back to 1966 or 68 from 1994, which is when he filed his motion to reopen. What was the new and material evidence in 1994? It was a doctor who, I believe it wasn't decided by the board until 2003. So the motion was filed in 94. At some point between 94 and 2003, Mr. Dewberry produced an opinion from a doctor he was seeing in the late 90s who said, that doctor said, that it appears that he has cardiomyogaly, and that that doctor opined that it appeared that that cardiomyogaly arose from service or could have arose from service. And in that context, the Veterans Administration, given the benefit of the doubt in that context, that limited context, said, we'll accept your opinion that you profit us and give you a rating for this condition. And that's what the doctor used to conclude that this heart condition was service-connected. Was it all the same examination reports that are in this record from the late 1960s? And more, because there was ongoing treatment. So it was much more examinations. But importantly, the decision to give him that rating that started in 1994, that was the effective date. That decision isn't on appeal here, Your Honor. That decision that was made in 2003 by the VA to give him that rating was based upon new and material evidence and under the rules and regulations that apply, that the effective date is the date of the motion to reopen. So you're saying that the doctor's diagnosis in the late 1990s was the new material evidence? Or are you saying that the doctor's diagnosis in the late 1990s was based on some additional evidence above and beyond the evidence that existed in the late 1950s? His opinion was the new, and whatever medical test documentation he relied upon, that doctor, beyond what was in the record, that was all new material evidence. So the doctor that gave that opinion, that opinion itself was new material evidence, and to the extent that that doctor relied upon tests and medical procedures that weren't part of the decision that was made in 1968, that would also be new material evidence. I will say, Your Honor, this part of the case, the motion to reopen and the result, all that's in the record here regarding that case is, I believe, Mr. Dewberry's motion and the decision to give him a rating and a few other documents. The medical records themselves are not in the record. And Mr. Dewberry doesn't even mention this in either one of his briefs, that this motion to reopen was filed in 1994 and that it led to this rating. That's something that we added to our brief to give the Court the full picture. But I think this is the important point is that the Board found in 2003 when it gave him the rating that it was based upon new material evidence and under the rules and regulations that apply, the effective date would be the date that he filed the motion to reopen. And that decision to give that effective date isn't being appealed here. So what we're looking at now under the Q claim is the evidence that existed in 1966-68 only and whether under that evidence there was a clear and unmistakable error made at that time by the Veterans Administration when he was released, not to find service connection for this condition. And based upon the evidence in the record at that time, the VA made the factual finding. I guess the opposing counsel seems to be making some kind of legal argument that the presumption of soundness, because it was improperly applied 40 years ago, 45 years ago, now that places the burden on the VA to prove everything clearly and unmistakably. Is that a legal argument that you therefore have to address? Not only that he was presumed to be fine when he entered service, but there should be some strong presumption that he was not fine when he was discharged? To the extent that Mr. Dewberry is attempting to present legal arguments, there was no misapplication of a rule of law or of a statute or regulation here. Indeed, the whole point of the board and the Veterans Court, assuming that the presumption of soundness should have been applied, was to make sure that that analysis was documented so that this court would, if there was an appeal, would understand that they did that analysis and used the correct standard when they did the analysis. When the presumption of soundness, when they assumed that it needed to be applied, they looked at the facts at the time in the record and the determination was that there was no objective or presumptive evidence in the record that he had this condition at the time. It was a factual finding based upon the correct legal standard. There's no basis for jurisdiction because of the correct rule of law was applied. Can I ask you a process question that has less to do with this case than just because I'm kind of rusty on these cases? You mentioned a few minutes ago that on the case that he prevailed in, the one that was filed in 1994 and whatever, could he have challenged the effective date with respect to that case? I mean, he got his benefits back to 1994 because that was the date of filing. Could he have challenged the effective date there and avoided the stricter limitations that are applied in the Q claim or was his only resort to then file a new Q claim to try to get the benefits back to 1968? This is just a neutral process. Yes, Your Honor. I believe he could have done that. We could speculate as to why he didn't, but the rule that applies for the effective date is very clear and so that may have informed why he chose not to take that approach. To get all the way back to 1968 in that 1994 claim, wouldn't he have had to include in addition a Q claim? That makes sense, Your Honor, but I mean, I guess, I don't know what other arguments he could have come up with to try to attack the 2003 decision, but Q would be the most, I mean, there again, it would have to meet all the requirements of Q and just looking at the decision of the board from 2003 that gave him the service connection, there's no error from what I can tell him,  but I don't want to go too far, but that decision was based upon new and material evidence that wasn't in the record at the time that we're looking at for this Q claim. That's the most important thing. And so the record evidence that existed at the time that we're looking at for the purposes of this Q claim here, that evidence was weighed by the board and the veteran court agreed with the board's assessment, which is a factual determination. And just to reiterate, the notion that there could be a legal issue here, that inevitably, the Holton case, for example, talks about the presumption of soundness does not relieve the veteran of the burden of showing that the veteran suffered from a disease of injury while in service. And this goes to the service connection prongs that you need, the three prongs of service connection. One of them is the nexus prong, that your current condition is related to the condition that arose during service. So because the presumption of soundness doesn't address the nexus prong, the notion that somehow not failing to properly apply the presumption of soundness automatically equals a clear and unmistakable error, it doesn't match up and it requires more analysis. And so that legal argument has to fail even on a legal basis. But the court doesn't need to reach that because this case turns on a factual determination. Thank you. For the reasons in our brief, as argued here, we respectfully request that you dismiss this appeal. Thank you. Your Honors, I think the only thing I would say in closing would be that the presumption of soundness created a burden shift and the burden was on the government and the government didn't meet its burden. And my argument has been consistently throughout that the burden of proof itself is a seminal element of the judicial process. And if one of the parties had the burden of proof and didn't meet their burden of proof, they shouldn't be entitled to prevail. And in our case, when the burden shifted to the government, it was lifted from our shoulders. And the government investigated this case because Mr. Dewberry made his case to the government when he made his initial VA claim in 1968 upon discharge with records from the Army showing the suggestion of the condition and the VA's own investigation showed a suggestion of the condition. And instead of outright denying the case based on the facts that existed at the time, the government said, if it's there, it preexisted. And when they did that, they invoked the presumption of soundness by saying it preexisted. And since we don't have the burden of proof, we shouldn't be denied our claim because the government had the burden of proof and the government has basically acknowledged that it didn't meet that burden of proof. And my argument has been the government shouldn't be entitled to prevail if it bore the burden and didn't meet its burden. And that's my argument. Thank you. Thank you, judges. Thank you.